UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**RICHARD DALE TURNER,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　Case No. 2:16-cv-04346

**C.O. HOLIDAY,** *et al.*,

    **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

    This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is a Motion for Summary Judgment filed by defendants Holiday and Toney (ECF No. 29).

### PROCEDURAL HISTORY

    The plaintiff's Complaint alleges that, on April 7, 2016, he was physically and verbally assaulted and sprayed with chemical agents by C.O. Perry, C.O. Allen, Sgt. Toney and C.O. Holiday as he attempted to speak to his wife, who was also an inmate, through a section door at the South Central Regional Jail ("SCRJ"). He further alleges that some of the physical abuse occurred after he was restrained. The plaintiff further alleges that he was subsequently denied medical treatment for his injuries and that, during this incident, personal property was stolen from his unlocked cell by other inmates.

Although no discovery has presently taken place in this matter, on March 8, 2018, defendants Holiday and Toney filed a Motion for Summary Judgment (ECF No. 29) and Memorandum of Law in support thereof (ECF No. 30), asserting that video evidence capturing the events in question demonstrate that there is no genuine issue of material fact and they are entitled to judgment as a matter of law on the plaintiff's claims. On April 16, 2018, the plaintiff filed a letter-form response to the Motion for Summary Judgment (ECF No. 33). The defendants did not file a reply brief. This motion is ripe for adjudication.

## **STANDARD OF REVIEW**

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim. *Celotex,* 477 U.S. at 322-23. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586-87 (1986). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D. W. Va. 2000).

## **ANALYSIS**

The plaintiff's Complaint alleges, in pertinent part, as follows:

On 4-7-16, between the hours of 7 am and 7 pm I was caused harm by corrections officers [illegible] meaning I was physically and verbally assaulted. I ask C.O. Perry if I could go to section door and talk to my wife. He said yes. When I did, he come up and said let's go and I said, "You said I could talk." He said "Now!" and a couple words were exchanged. Him and Officer Allen then attempted to pull me away from the door. Then they began knee striking me in the thigh and yelling obscenities. Then when I let go, I got sprayed in the head with the mase [sic]. I got on the ground. Was restrained with cuffs. I got struck after being restrained. Perry was saying, "I told you to get off the door motherfucker!" Sgt. Toney was yelling, "Don't fuck with me, I'm the wrong one. I'll empty this whole can on your ass." Then I was stood up and being walked up the hallway when C.O. Holiday came across the hall and chest bumped me with hers while saying, "I wish you would do something motherfucker." There was no picks [sic] taken of my injuries

3

as was suppose to be. I was taken to medical, but denied treatment.

(ECF No. 1 at 4-6).

Because the plaintiff appears to have been a pretrial detainee at the SCRJ at the time of this alleged incident, his claim of excessive use of force arises under the Fourteenth Amendment of the United States Constitution. As noted in the defendants' Memorandum of Law, in order to establish an excessive force claim under the Fourteenth Amendment, a prisoner must satisfy an objective standard. Thus, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015). The Supreme Court further stated that the determination concerning objective reasonableness turns on the "facts and circumstances of each particular case" and must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court further stated:

> A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 99 S. Ct. 1861, 60 L. Ed.2d 447 (1979).
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g., Graham, supra*, at 396, 109 S. Ct. 1865. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

123 S. Ct. at 2473.

As noted above, at the summary judgment stage, the facts must be viewed in the light most favorable to the non-moving party, which, in this case, is the plaintiff. However, in *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court held that, where evidence exists that so utterly discredits the plaintiff's version of the facts, there can be no "genuine" issue of material fact, and the court should not adopt the contradicted version of the facts for the purposes of ruling on a summary judgment motion.

Here, the defendants assert that the video evidence produced with their motion clearly contradicts the plaintiff's version of the facts and demonstrates that the force used against the plaintiff was reasonable under the circumstances or did not occur. (ECF No. 30 at 2-3). Specifically, the defendants' Memorandum of Law asserts:

> The video analysis of this matter starts with camera "APOD gate 7," at approximately 2:18:20. At that time, Plaintiff, the inmate in orange, can be seen approaching and moving to the left to speak at the A POD Section 1 door, where his wife was housed. An officer can be seen conversing with him in the hallway and moving across the hall to open the door to A POD Section 8, which was the housing unit for Plaintiff. Plaintiff continues to talk at the Section 1 door and eventually the officer moves over to speak with him to put him into his housing unit. No movement in that direction is made by the Plaintiff. Another officer arrived on the scene and also attempts to persuade Plaintiff to leave the door at which he is speaking and move to his housing unit. The conversation is clearly taking place between the officers and Plaintiff.
>
> At approximately 2:21:39, it becomes clear that physical engagement is beginning to occur. At approximately 2:21:46, the officers can be seen attempting to remove Plaintiff from the door, and his resisting and continuing to hold onto the door and to not let go.
>
> At approximately 2:22:02, an officer (Defendant Toney) who had rapidly approached from up the hall arrives and administers Oleoresin Capsicum ("OC") to Plaintiff as a result of his refusal to let go of the door. (Exhibit B). Plaintiff can be seen continuing to hold onto the door until a knee strike is delivered at approximately 2:22:08. Officers then proceed to gain control of the noncompliant inmate and to place restraints on him. It is important to note that all reports indicate that

5

> Defendant Sergeant Toney is the officer who administered the OC to the Plaintiff.
>
> At approximately 2:22:20, Defendant CO Holiday can be seen appearing on the scene. She is readily recognized as Officer Holiday is a black female. (Exhibit C). She will remain on the scene until approximately 2:23:11 when she departs and moves up the hall. Plaintiff is restrained, brought to his feet, and begins moving up the hall escorted toward the medical unit for mandatory check at approximately 2:23:31.
>
> Plaintiff appears on camera view "Gym to A-POD" at approximately 2:23:25. It is important to note that he is being escorted by white male officers and not by officer Holiday. Plaintiff goes off camera on that view at approximately 2:23:39.
>
> Plaintiff is next seen on camera view "Gym to Central" being escorted down the hallway and goes off camera at approximately 2:23:55. He next appears on camera view "APOD rec yard doors" and continues his escort toward the medical unit. He leaves the camera view at approximately 2:24:44.

(ECF No. 30 at 3-4).

*The alleged conduct of the correctional officers other than C.O. Holiday*

Concerning the claim against Sergeant Toney, the defendants' Memorandum of Law admits that Toney was the correctional officer who deployed OC spray against the plaintiff. However, the defendants further assert that:

> It is clear that Plaintiff was struggling with two officers, resisting their commands, being noncompliant, and could not be controlled. It is clear from the video evidence that the OC was administered in a very quick burst which, according to the video, may have struck another officer more than it struck Plaintiff. This tactic to attempt to gain control is preferable to physical force which could cause physical injury to Plaintiff and/or the officers. (Exhibit D, pgs. 5, 8).
>
> Plaintiff clearly continues to be noncompliant and hold onto the door until an appropriate knee strike is delivered to get him to the floor.[1] After that occurrence, no further evidence of use of force other than the application of mechanical restraints is seen. Given that scenario, Sergeant

---

[1] The plaintiff does not allege that Sergeant Toney was the officer who delivered the knee strike and it appears from the video that he was not. Thus, it appears that the knee strike may have been delivered by one of the other defendant correctional officers who has not been successfully served with process and has not made an appearance herein.

> Toney's actions can certainly not be deemed "unreasonable" by this Court or by a jury. His actions should be deemed reasonable as a matter of law. Again, the video belies Plaintiff's allegations that after being sprayed he got on the ground, was restrained, and was struck by officers while being restrained.

(ECF No. 30 at 5-6). The plaintiff's Response contends that Sergeant Toney was cursing him as he pepper sprayed him, but offers no additional evidence or argument concerning the alleged unreasonableness of this conduct. (ECF No. 33 at 1).

Based upon a review of the video evidence, as well as the other exhibits offered by the defendants, it appears that there was a need for the use of force to gain the plaintiff's compliance with the correctional officers' commands to return to his housing unit. Despite the lack of audio on the footage provided, it appears that the plaintiff was permitted to briefly go to the other section door where his wife was being housed.

However, as apparent from the video footage, the plaintiff then actively resisted and refused the orders to return to his section. As further evident from the video footage, the two correctional officers initially on the scene had not yet gained the plaintiff's compliance when Sergeant Toney arrives and deploys the OC spray. Likewise, the plaintiff was not yet under control when the other officer applied the knee strike to get the plaintiff onto the ground, and the officers thereafter gained his compliance and restrained and shackled him. All of this occurred in less than one minute.

It further appears from the video footage that there were brooms and mops or other cleaning equipment along the walls of the hallway, which could have been used as a weapon if the plaintiff had broken free from the officers who were attempting to gain his compliance. Consequently, a reasonable officer could have perceived the

7

plaintiff's conduct under the circumstances to be threatening. Under all of these circumstances, the conduct of the defendants, up to that point, was objectively reasonable and, thus, did not violate the Fourteenth Amendment. Moreover, because the plaintiff has not demonstrated the violation of a clearly-established constitutional right, the defendants allegedly involved in this portion of the incidents alleged in the plaintiff's Complaint (Sgt. Toney, and presumably C.O. Perry and C.O. Allen, who have not been served with process) are entitled to qualified immunity on the plaintiff's claims against them.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law on the plaintiff's Fourteenth Amendment claims against the officers involved in this use of force incident.

### *The alleged conduct of C.O. Holiday*

The defendants' Motion and Memorandum of Law further assert that the plaintiff's allegation that he was "being walked up the hallway when CO Holiday came across the hall and chest bumped me with hers while saying 'I wish you would do something motherfucker'" is belied by the video evidence. Their Memorandum of Law states, "Clearly, when the video is observed, that did not occur. No black female appears. No one chest bumps Plaintiff. Once leaving the hallway area of A POD prior to plaintiff being brought to his feet and escorted down the hallway, C.O. Holiday does not again appear in the video." (*Id.* at 5). However, in his response to the Motion for Summary Judgment, the plaintiff contends that "[t]he videos show clearly that Officer Holiday ran across the hall and chest bumped me." (ECF No. 33 at 1).

The portions of the video cited by the defendants in their Memorandum of Law do not demonstrate the alleged conduct by defendant Holiday. However, a review of another portion of the video evidence calls into doubt the defendants' assertion that the alleged altercation between the plaintiff and defendant Holiday could not have occurred. In the camera angle marked "APOD gate 6," the video footage captured the incident from another angle of the A-POD hallway. At approximately 2:23:33, as the plaintiff is being escorted down the hallway, the plaintiff and the officers surrounding him move toward the left-hand wall. Between 2:23:35 and 2:23:37, a correctional officer, who appears to be a black female, moves quickly across the hallway from right to left towards where the plaintiff was standing. It is impossible to tell from this camera angle what exchange, if any, occurred between that officer and the plaintiff at that time.

In light of this footage, there is no obvious evidence that Officer Holiday's alleged conduct did not occur or that the plaintiff's version of the facts concerning her conduct is "so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 530 U.S. at 380-81. In *Witt v. West Virginia State Police Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011), the Court held that the Supreme Court's *Scott* decision "does not permit a court to reject one side's recitation of the facts as a matter of law if the 'documentary evidence such as a video' merely 'offers *some* support for [the other side's] version of events.'" Such is the case here with respect to the video evidence presented by the defendants.

Taking the evidence in the light most favorable to the plaintiff, even though it ultimately may not be found to be credible by a reasonable factfinder, there is a genuine issue of material fact concerning the plaintiff's claim that C.O. Holiday used

9

unreasonable force against him.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the defendant Holiday is not entitled to judgment as a matter of law and qualified immunity on this aspect of the plaintiff's excessive force claims and, thus, the defendants' Motion for Summary Judgment should be denied with respect to the claim against C.O. Holiday.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 29) with respect to the claims against Sgt. Toney, C.O. Perry, and C.O. Allen, and **DENY** the same with respect to the claim against C.O. Holiday and leave this matter referred to the undersigned for additional proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

November 20, 2018

Dwane L. Tinsley
United States Magistrate Judge